St. Louis Southwestern Railway Company v. Green.

Opinion delivered July 3, 1911.

1.  Carriers—liability for failure to furnish waiting room.—Under Kirby's Digest, sec. 6334, requiring railroads to keep separate waiting rooms in all depot buildings for the accommodation of their passengers open both day and night for their free and unrestricted use," a railroad company is liable for damages resulting to passengers from its failure to provide them a waiting room. (Page 574.)

2.  Same—failure to furnish waiting room.—Colored passengers waiting at a station for their train are entitled to recover for damages caused by the railway company's failure to provide them a waiting room, though a stranger directed them to go into the waiting room designated for the white race. (Page 575.)

Appeal from Craighead Circuit Court; *Frank Smith,* Judge; affirmed.

*S. H. West* and *J. C. Hawthorne,* for appellant.

The statute was enacted for the purpose of separating the races. Where it provides that one insisting on going into a wait-

ing room to which by race or color he does not belong, it should be construed to mean where that room is occupied by persons of different race at the same time, and should not be construed to render him liable for occupying the room where it is not occupied by the other race, even if he had notice that it was set apart for the opposite race.   93 Ark. 244; 87 S. W. 262; *Id.* 426.

In view of the fact that there was a waiting room available which would have protected appellees from exposure, had they availed themselves of the invitation to enter, their recovery should be limited to nominal damages.   At any rate, the question of damages should have been submitted to the jury on the theory that it was appellees' duty to have gone into the unoccupied waiting room, and no recovery should be allowed for sickness resulting from their exposure.   84 S. W. (Ky.) 566.

*J. F. Gautney,* for appellee.

The law provides that there must be separate waiting rooms, and that any one insisting on going into a room to which his race does not belong shall be liable to punishment by a fine. Kirby's Dig., § § 6634, 6628.   Appellees knew of this law.   The law also provides that if "any officer of any railroad company *assigns* a passenger or person to a * * * room other than the one set aside for the race to which said passenger or person belongs, shall be liable to a fine of twenty-five dollars."   Since it is made the duty of officers of railroad companies to *assign* persons to the room to which by race they belong, no other persons can repeal it by invitation to a person of one race to occupy a room set apart for the other.

Appellees will not be held to violate the law in order to reduce their damages.   34 Atl. 157; 6 Am. and Eng. Ann. Cases, 569.   The case of *Bradford* v. *Railway,* 93 Ark. 244, cited by appellant, is not applicable to the facts in this case.

WOOD, J.   The plaintiffs, Charlie and Lucy Green, colored, were passengers from Little Rock to Jonesboro on the defendant's line.   They stopped off at Altheimer, and about 11 o'clock at night were refused admittance to the colored waiting room by the colored porter in charge.   The night was damp, and it was raining slightly.   A white man on the platform invited them into the white waiting room; they refused to enter it, and undertook to shelter themselves from the dampness of the night

by going on a small porch near the railroad premises. They claimed to have suffered damages, and sued and recovered $155.

There was evidence tending to prove that Lucy Green, because of the exposure incident to her refusal to occupy the white waiting room, contracted cold from which she suffered for two or three months. She was pregnant at the time, and the cold she contracted during the two or three hours she was exposed to the wind and dampness caused pain in her side and head. It was December 29. The night was cold, and the wind was blowing the rain in their faces. The verdict in the favor of appellee, Lucy Green, in the sum of $150 was not excessive if she was entitled to recover in any sum. The verdict in favor of Chas. Green was for only $5. If he had the right to damages at all, the above amount was scarcely more than nominal damages, and is clearly not excessive.

The real question in the case is whether or not under the undisputed evidence appellant is liable. The law requires that railroads "shall keep separate waiting rooms in all depot buildings for the accommodation of their passengers open both day and night for their free and unrestricted use." "The agents at such depots shall have power and are required to assign each passenger or person to the compartment or room used for the race to which said passenger or person belongs." Any passenger or person insisting on going into a coach or compartment or room to which by race he does not belong shall be liable to a fine of not less than ten dollars, nor more than two hundred dollars, and any officer of any railroad company assigning a passenger or peson to a coach or compartment or room other than the one set aside for the race to which said passenger or person belongs shall be liable to a fine of $25. Another section makes it the duty of the agent at the depot to eject any person entering any "sitting or waiting room not assigned to his or her race, for the purpose of occupying or waiting in such sitting or waiting room, and for such acts neither they [depot agents] nor the railway company shall be liable for damages in any of the courts of this State." Another section makes railway companies and depot agents who "shall refuse or neglect to comply with the provisions and requirements of this act guilty of a misdemeanor," etc. Sections 6634, 6627, 6628, 6629, 6623, Kirby's Digest.

The evidence shows that appellant had separate waiting rooms at the depot at Altheimer for the white and colored races. One witness testified that there was a "colored side" there, and the testimony of appellees showed that there was at the depot at Altheimer a "colored waiting room," meaning, of course, a waiting room for colored people.

Having such a waiting room, appellant was liable in damages to appellees for the conduct of its porter in refusing to permit appellees to enter such waiting room, because under the law not only was it the duty of appellant to permit appellees to occupy the waiting room assigned to and designated for their race, but it was its duty positively to assign appellees to the waiting room designated for the race to which appellees belonged. Appellant under the law owed appellees this affirmative duty, and hence was negligent when it failed to discharge it, and was liable for the damages resultant from such negligence.

No stranger was authorized to direct appellees to occupy the waiting room designated by the appellant for the white race, and appellees were not negligent themselves because they refused to heed the voice of the stranger. On the contrary, they were diligent and wise in not obeying such voice, for, had they done so, they might have subjected themselves to punishment for a violation of the law. The conduct of appellant was tantamount to a refusal on its part to admit appellees to its waiting room, or to a failure on its part to provide them a waiting room. For such negligence it unquestionably would be liable. *Boothby* v. *Grand Trunk Ry.,* 34 Atl. 157; *Draper* v. *Evansville & T. H. Rd. Co.,* 6 A. & E. Ann. Cas. 569.

The facts make the case wholly unlike that of *Bradford* v. *St. Louis, I. M. & S. Ry. Co.,* 93 Ark. 244, where we held that the conductor of a passenger train in an emergency had the right to reassign coaches for the different races, and to compel the passengers to take the coaches thus set apart for their separate use. Here there was no reassignment of the waiting rooms by the appellant, even if it could be done in an emergency; and there was no emergency, even if an emergency would warrant a reassignment. The case is simply a bald failure on the part of appellant to perform a statutory duty, which the jury found upon sufficient evidence resulted in damage to appellees. It was

a question for the jury as to whether the negligence of appellant was the proximate cause of the injury and damage of which the appellees complain.

The court did not err in its instructions. Let the judgment be affirmed.