## STRATFORD v. MIDLAND VALLEY R. CO.

No. 2160.  Opinion Filed November 19, 1912.

(128 Pac. 98.)

**CARRIERS—Expulsion of Passenger—Liability of Carrier.** Section 443, Comp. Laws 1909, imposes the specific duty of removing any passenger not entitled to ride therein, under the provisions of the so-called ''Jim Crow'' Act, upon the conductor in chârge of the train, car, etc., and provides a heavy penalty for his failure to enforce the law in that respect, and exempts the company, manager, conductor, receiver, or other officer from liability for damages for the removal of any passenger as provided for in said act. **Held,** that the duty being one imposed specifically on the conductor by law, and not on the carrier, the latter will not be liable for damages, in a suit brought by a passenger against the company, for the wrongful expulsion, arrest, or imprisonment occasioned by the conductor, and which was in no wise ordered or authorized by the company.

(Syllabus by Robertson, C.)

*Error from District Court, Osage County;*
*John J. Shea, Judge.*

Action by John B. Stratford against the Midland Valley Railroad Company. Judgment for defendant, and plaintiff brings error.  Affirmed.

This is an action by John B. Stratford, a negro, against the Midland Valley Railroad Company, for damages on account of false imprisonment and malicious prosecution.  The first count of the petition alleges, in substance, that on the 2d day of January, 1909, the plaintiff purchased a first-class passenger ticket over defendant's railroad from defendant's agent at its ticket office in Arkansas City, Kan., entitling plaintiff to be carried from Arkansas City, Kan., to Tulsa, Okla., for which plaintiff paid defendant the sum of $3.26; that plaintiff boarded one of the passenger trains owned and operated by defendant, at Arkansas City, intending to go to Tulsa, Okla.; that said train was in charge of L. O'Hara, who was then and there in the employ of defendant as a passenger conductor; that, shortly after said trair

left Arkansas City, the said conductor took up and collected the above-mentioned ticket from the plaintiff, and permitted plaintiff to ride in the car of said train in which he was then riding, without protest or objection, until said train had passed out of the state of Kansas, and into the state of Oklahoma, whereupon the said conductor told the plaintiff that said train was within the state of Oklahoma, and that the "Jim Crow" car was in front, and ordered plaintiff to go forward and ride in the "Jim Crow" car, which constituted a part of said train; that plaintiff informed said conductor that he would go into the "Jim Crow" car, but desired first to make a statement, whereupon the conductor refused to listen to such statement, but, on the contrary, immediately took hold of plaintiff's arm in a violent and angry manner and endeavored to drag plaintiff from his seat; "that plaintiff, to prevent further bodily pain, and injury, wrested his arm from the grasp of said conductor;" that said conductor thereupon pulled the bell cord and signaled the engineer to stop, whereupon plaintiff got up out of his seat and entered the "Jim Crow" car and rode therein to Pawhuska; that prior to the arrival of said train at Pawhuska the conductor telegraphed to defendant's station agent at Pawhuska and directed him to have an officer at the depot upon the arrival of the train to arrest plaintiff; that on arriving at Pawhuska plaintiff left the car and went into a restaurant; that the conductor at that time, without reasonable or probable cause, and willfully and maliciously pointed the plaintiff out to a deputy sheriff of Osage county, who, without a warrant, willfully and maliciously, and without reasonable or probable cause, arrested plaintiff, and took him before the county court of Osage county, where he was charged with violating the "Jim Crow" Law, and was thus by the defendant, and through its employees and agents, "wrongfully, unlawfully, falsely, maliciously, and without any reasonable or probable cause whatsoever * * * falsely imprisoned, kept, held, detained, and restrained of his liberty, against his will, to the great humiliation, pain, and damage of said plaintiff, in the sum of $2,500;" and that, by reason of said wrongful arrest and false imprisonment, plaintiff was detained and prevented from continu-

ing his journey upon said train to Tulsa, according to the terms of said first-class passenger ticket, and was thereby prevented from keeping a business engagement, and was thereby damaged in the sum of $60, and the further sum of $2.85, transportation from Pawhuska to Tulsa; that defendant refused to return the ticket or to refund plaintiff the value of the unused ticket from Pawhuska to Tulsa, to the damage of plaintiff of $1.50.

The second count, in substance, charges that the defendant, by and through its agent and servant, the conductor hereinbefore named, contriving and intending to injure and damage the plaintiff, did on the 2d day of January, 1909, falsely, maliciously, and without reasonable or probable cause, and without due process of law, arrest the plaintiff, and take him forcibly along the streets of Pawhuska, and compel him to go to the office of the sheriff of Osage county, and then and there detained the plaintiff for the space of one day, all against his will, and to his damage. And that the said defendant thereafter procured one J. W. Boone to make information in writing, under oath, charging the plaintiff with having committed the crime of riding in a coach on the Midland Valley Railroad Company, provided and designated for white people, he, the plaintiff, then and there being a negro, and that by reason of such willful, false, and malicious charge the plaintiff was required to appear before the county judge of said county, to answer the said charge, and to then and there give a cash bond in the sum of $25 to be and appear before said court on the 20th day of January thereafter, to answer said charge, and to abide the order and judgment of said court. That on the 20th day of January, 1909, the plaintiff appeared before the county court of Osage county to answer and defend against the charge as aforesaid, and that said cause was tried to said court, without a jury, and that after the state had rested plaintiff demurred to the evidence, which demurrer was sustained by the court, and plaintiff was discharged from said prosecution. Plaintiff charges that said prosecution by the defendant railroad company, by and through its agent, servant, and employee, O'Hara, a passenger conductor, was wholly unfounded and without just or probable cause, and was begun, carried on, and prosecuted by said defend-

ant, by and through its said agent, servant, and employee, from malice toward the plaintiff, and to wrong and injure him. Plaintiff further states that by reason of the acts of defendant, as aforesaid, in and about the prosecution, as aforesaid, he was put to great trouble and expense in his defense and was compelled to pay out $100 counsel fees, and other expenses, and was subjected to loss of time, and detained from business, to his damage in the sum of $75, and that he was further greatly, grievously, and permanently injured in his business and reputation in a reasonable damage of $2,500. To the petition of plaintiff the defendant filed a general denial, and on the issues thus joined the cause went to trial in the district court of Osage county, on the 16th day of December, 1909.

After plaintiff had introduced his evidence and rested, the railroad company interposed a demurrer, which was sustained by the court, and a judgment was entered dismissing the petition and taxing the costs to the plaintiff, from which judgment plaintiff brings this appeal.

*Joseph D. Mitchell* and *H. P. White* (*W. B. Blair*, of counsel), for plaintiff in error.

*Edgar A. De Meules* and *Sol H. Kauffman,* for defendant in error.

Opinion by ROBERTSON, C. (after stating the facts as above). Counsel for plaintiff in error have presented several questions for the consideration of the court. They attempt to show that the facts of this case, under the law applicable thereto, warrant a judgment against the railroad company, for false imprisonment, and for malicious prosecution as well. They also urge the fact that their client, being an interstate passenger, was not subject to the operations of the so-called "Jim Crow" Law, and urge its unconstitutionality on the ground of unjust and unfair discrimination between citizens, etc. This contention has been repudiated long ago, and only recently this statute was upheld in a very able opinion in the Circuit Court of Appeals of this circuit, in the case of *McCabe v. Railway Co.,* 186 Fed. 966, 109 C. C. A. 110. We are of opinion that there is but one question

in the case, and in order to dispose of it let us look to the statute in order to ascertain the rights and duties of the parties. This law is found in sections 434 to 444, inclusive, Comp. Laws 1909. Section 439 provides:

"If any passenger upon a railway train * * * provided with separate coaches, or compartments, as above provided, shall ride in any coach or compartment not designated for his race, after having been forbidden to do so by the conductor in charge of the train or car, * * * he shall be guilty of a misdemeanor, and upon conviction shall be fined not less than five, nor more than twenty-five dollars. Should any passenger refuse to occupy the coach or compartment or room to which he or she is assigned by the officer of such railway company, said officer shall have the power to refuse to carry such passenger, on his train * * * and for such neither they nor the railway company which they represent, shall be liable for damages in any of the courts of this state."

Section 433 reads as follows:

"Conductors of passenger trains, street cars, urban, suburban or interurban lines provided with separate coaches or compartments shall have the authority to refuse any passenger admittance to any coach or compartment in which they are not entitled to ride under the provisions of this act, and the conductor in charge of the train, street car, urban, suburban or interurban car shall have authority, and it shall be his duty to remove from the train, coach, street car, urban, suburban or interurban car, any passenger not entitled to ride therein under the provisions of this act; upon his refusal to do so knowingly, shall be guilty of a misdemeanor and upon conviction shall be fined in any sum of not less than fifty nor more than five hundred dollars, and the company, manager, agent, conductor, receiver or other officer, shall not be held for damages of any lawful removal of a passenger as provided herein."

It is thus seen that by the terms of the above statute it is a misdemeanor for a negro to ride in a white coach, or a white person to ride in a negro coach, within the state of Oklahoma, and it further appears that it is also a high-grade misdemeanor for a conductor knowingly to permit the same, or to fail to remove any person who may attempt to or ride in a coach which, on account of his color, the law prohibits. It will be observed that this is not a rule or regulation provided by the railroad com-

pany, but one imposed by the state, not especially on the railroad company, but primarily upon the conductor or other person in charge of the train or car. No such rule or regulation as that laid down in the foregoing statute is necessary to enable the carrier to carry on its business, as that business existed prior to the enactment of that statute. The rule or regulation was one demanded by all the people of the state, and was imposed on the conductor, or other person in charge of the train or car, not by request, or even the consent, of the carrier, but doubtless against its wish. The only duty imposed on common carriers under the provisions of the statute above mentioned is to provide separate coaches, or compartments, while section 438 provides that it. shall be a crime if such separate coaches, etc., are not provided. Section 439 provides that it shall be a misdemeanor for any person to ride in a coach or compartment provided for one of the opposite race. Section 443 specifically provides that it shall be the duty (not of the carrier but) of the conductor of the train, in the first instance, to enforce the provisions of this statue. Hence, if it is the duty of the conductor to enforce the provisions of the statute in this regard, why should the carrier be held liable for any damage that might occur by reason of the discharge of this duty, which, as we have seen, was imposed upon the conductor by express provision of the statute, and not by any command, rule, or regulation of the carrier. The acts of the conductor were performed at the express command of the state. not of the carrier, and as such he became, as it were, the officer of the state for the purpose of enforcing the provisions of the statute. The carrier had nothing to do with the arrest, imprisonment, or prosecution, directly, or indirectly, and gave no orders of any character to the conductor relative to the same. He was not controlled, in any wise, in his efforts in this matter, by the carrier, and necessarily he was not responsible to his employer for its enforcement. He was, as between the parties, an independent agency, responsible, as other officers and persons, for acts beyond his authority. Nor does plaintiff contend that the company, or any of its officers, except the conductor, were consulted, or interested personally in, or gave any orders or directions whatso-

ever, relative to the arrest and prosecution complained of, but contents himself by alleging that the wrongful act of the conductor, acting for and on behalf of the company, was the act of the company, and that the company is therefore liable. This position, as has been seen by the provisions of the statute above quoted, is untenable; the conductor in this case, in the discharge of the specific duty imposed upon him by the state, was not enforcing any private right, nor any rule or regulation of the carrier, but, on the contrary, was acting for and on behalf of the entire public and was in fact a public officer charged with a duty and liable to a severe penalty if he failed to perform it. Under these circumstances the company would not be liable for the acts complained of under the allegations of the petition, and no error was committed by the learned trial court in sustaining the demurrer.

We do not wish to be understood as saying that plaintiff in error is remediless. That question, not being before us, is not decided. The only question presented by the record is the liability of the railroad under the pleadings and the facts. As has been seen, no liability attached, and plaintiff is not entitled to recover. Having reached this conclusion, no good end would be accomplished by the consideration of the other questions raised in the petition in error.

The judgment of the district court of Osage county should be affirmed.

By the Court: It is so ordered.