LITTLE ROCK RAILWAY & ELECTRIC COMPANY *v.* HAMPTON.

## Opinion delivered March 23, 1914.

1. STREET RAILWAYS—WHITE AND COLORED PASSENGERS—SEPARATE ACCOMMODATIONS.—The separate street car statute, Kirby's Digest, § § 5658 to 5663, inclusive, contemplates equal treatment of the races, but requires that separate accommodations shall be furnished. (Page 201.)

2. STREET RAILWAYS—WHITE AND COLORED PASSENGERS—SEPARATE ACCOMMODATIONS—COMPLIANCE WITH RULE.—Where a street railway company, under the separate street car statute, required white passengers to seat from the front, and colored passengers to seat from the rear of the cars, the strictness with which the rule should be enforced by the employees of the company should depend upon the number and color of the passengers, and upon the scarcity of seats. (Page 201.)

3. STREET RAILWAYS—PASSENGERS—DUTY TO TAKE SEAT ASSIGNED.—A passenger on a street car is required, under Kirby's Digest, § 5661, to take the seat assigned to him, or to leave the car, and, failing to do so, must leave the car or be subject to a fine, but if the passenger refuses to take the seat assigned to him, may use such force as is necessary to compel a compliance with the rules of the company. (Page 201.)

4. STREET RAILWAYS—RULES AND REGULATIONS—PASSENGERS.—Kirby's
   Digest, § 5660, provides that a street car conductor may "require"
   any passenger to change his seat when or so often as the change
   in the passengers may make such change neccesary; *held*, the
   word "require" is synonymous with the word "compel," and gives
   the conductor authority to use such force as is reasonably neces-
   sary to secure the observance of the statute, and the rules of the
   company promulgated in aid thereof.   (Page 201.)

Appeal from Pulaski Circuit Court, Second Divi-
sion; *Guy Fulk,* Judge; reversed.

### STATEMENT BY THE COURT.

Appellee, who was a colored woman, entered one of
appellant's cars at Sixth and Main streets in the city of
Little Rock, and paid her fare as a passenger, and after
riding about a dozen blocks she was told by the conduc-
tor that she would have to move and take a seat nearer
the rear of the car.  Appellee refused to change seats,
but offered to leave the car, if her fare was refunded,
but the conductor declined to return the fare because
he had "rung it up" on the register of fares.  The con-
ductor continued to insist that appellee change her seat
and she persisted in her refusal to do so, whereupon the
conductor took appellee by the arm and attempted to
remove her from her seat, and, as she resisted vigor-
ously, considerable force was required to eject her from
the seat, as a result of which appellee says she sustained
serious personal injuries, as well as great humiliation.
It is not contended that the conductor used excessive
force in overcoming appellee's resistance, but it is in-
sisted that the conductor had no right to use any force
in requiring appellee to change her seat.

The controversy arose over the attempt of the con-
ductor to enforce the regulation of the appellant com-
pany requiring white passengers to seat from the front
of the car, and colored passengers to seat from the rear.
It was contended upon the part of appellant that the car
had become crowded and that a number of passengers,
all of whom were white, were standing in the car, and
that there were vacant seats between the one occupied by
appellee and the rear of the car, and that the conductor

was undertaking to require appellee to occupy the first vacant seat in the rear of the car. The evidence was conflicting as to the number of passengers and the scarcity of seats, and appellee insists there was no unoccupied seat to the rear of her, and that to have obeyed the conductor's order to vacate her seat would have required her to stand during the remainder of her journey. The evidence was conflicting, and we can not say what the facts were, but all parties recognized the right of the conductor to require white passengers to seat from the front of the car and colored passengers to seat from the rear, but appellee says the enforcement of this regulation did not necessitate a change of her seat because there were other and sufficient vacant seats for all white passengers. The court directed the jury to return a verdict for appellee, and gave instructions on the measure of damages, and a verdict was returned for appellee in the sum of $400, which we would not hold to be excessive had that verdict been returned under proper instructions. The instructions asked by appellant were to the effect that the conductor had the right to use such force as was reasonably necessary to enforce the statute in regard to the occupancy of seats in the car and that a passenger who refused to be so seated might be ejected from the car. The instructions given upon the part of appellee were to the effect that the conductor had the right to direct a passenger to change his seat, but that he would have no right to take hold of, or to abuse or assault a passenger, or to use any force in the enforcement of this regulation.

*Rose, Hemingway, Cantrell & Loughborough,* for appellant.

1. It was error to direct a verdict for plaintiff.

Conductors have the right to use necessary force to eject a passenger from a coach or seat he is not entitled to occupy. No unnecessary force or insult or humiliation must be used. Kirby's Dig., § § 5658-5663; 93 Ark. 244.

2.   The third instruction for plaintiff is abstract and misleading.   14 Ark. 530; 69 *Id.* 130; 77 *Id.* 569; 85 Ark. 394.

*W. H. Pemberton* and *Mehaffy, Reid & Mehaffy,* for appellee.

1.   A conductor has no right to forcibly eject a passenger who refuses to comply with the law.   This is a misdemeanor, subject to fine.   Kirby's Dig., § § 5658-5664, 93 Ark. 244, is not in point, as section 6629, Kirby's Dig., gives express authority to *railroad* conductors to eject.   In the absence of a statute, street car conductors have no such power.

2.   Where each party asks the court to direct a verdict, they agree to submit the question to the court.   159 S. W. 1113; 146 Fed. 1; 100 Ark. 71.

3.   The conductor used more force than was necessary.

SMITH, J., (after stating the facts).   The separate street car law (Kirby's Digest) reads as follows:

"Section 5658.   All persons, companies or corporations operating any street car line in any city of the first class, in the State of Arkansas, are hereby required to operate separate cars, or to separate the white and colored passengers in the cars operated for both, and to set apart or designate in each car or coach so operated for both a portion thereof, or certain seats therein to be occupied by white passengers, and a portion thereof or certain seats therein to be occupied by colored passengers."

"Section 5659.   No persons, companies or corporations so operating street cars shall make any difference or discrimination in the quality or convenience of the accommodations provided for the two races under the provisions of this act."

"Section 5660.   The conductor or other person in charge of any car or coach so operated upon any street car line shall have the right at any time, when in his judgment it may be necessary or proper for the comfort or convenience of passengers so to do, to change the said

designation so as to increase or decrease the amount of space or seats set apart for either race; or he may require any passenger to change his seat when or so often as the change in the passengers may make such change necessary.''

"Section 5661.    All passengers on any street car line shall be required to take the seat assigned to them, and any person refusing to do so shall leave the car, or, remaining upon the car, shall be guilty of a misdemeanor, and, upon conviction, shall be fined in any sum not to exceed twenty-five dollars.''

"Section 5662.    Any person, company or corporation failing to operate separate cars, or to set apart or designate portions of the cars operated for the separate accommodation of the white and colored passengers as provided by this act, shall be guilty of a misdemeanor, and, upon conviction shall be fined in any sum not to exceed twenty-five dollars.''

"Section 5663.    Nothing in this act shall be construed to prevent the running of extra or special cars for the exclusive accommodation of either white or colored passengers, if the regular cars are operated as required by this act.''

Appellee insists that the above law does not confer upon the conductor, or other persons in charge of a street car, the right to use any force in its enforcement, but that its provisions are enforceable only by the imposition of fines for its violation.    It is said that the case of *Bradford* v. *St. Louis, I. M. & S. Ry. Co.,* 93 Ark. 244, does not apply, because that case involved the right to enforce sections 6622-32 of Kirby's Digest, requiring railway companies to provide equal but separate and sufficient accommodations for the white and African races, and that section (6629) gives the railroad company the right to refuse to carry any passenger who refuses to occupy the coach or compartment assigned to him, and gives the right to eject any person from a waiting room, not assigned to his race.    This section gives expressly the right to eject only from the waiting room,

and provides for the enforcement of the provision for the occupancy of separate coaches by the imposition of a fine, and by providing that the officer in charge of such train shall have the power to refuse to carry such passenger on his train, and exemption from liability is given the railway company for all acts done in the enforcement of that statute. Notwithstanding the right to eject a passenger from a railway passenger coach was not expressly given, it was held in the Bradford case, *supra,* that that power and duty was necessarily implied and it was there held that a railroad company might forcibly eject a white passenger from a coach assigned to members of the colored race. Much of the reasoning of that case is applicable here, and the following extensive quotation is taken from that case:

"Prayer No. 7 is predicated upon the theory that when once separate coaches or compartments are assigned respectively to the white and African races, and the passenger has been furnished a seat in the car or compartment set apart for the use of the race to which he belongs, thereafter the officers of the train could not make a new and different assignment of cars, for the use of the separate races, and cause the passengers belonging to those races to adjust themselves accordingly. No warrant for such construction can be found in the provisions of the 'separate coach law.' Sections 6622 to 6632 inclusive of Kirby's Digest. The purpose of the law was to require railway companies to provide 'equal but separate and sufficient accommodations for the white and African races,' for their mutual comfort and convenience. The law should be so construed to conserve the welfare of the public, white and colored, who use this mode of travel. If the rigid and narrow construction obtained as set forth in prayer 7, the inevitable consequence would be at times to greatly inconvenience and annoy both races. The case at bar aptly illustrates what might result constantly if the conductor, having supervision of the train and entrusted with the duty of securing as far as practicable the comfort of all the passen-

gers, were not allowed, if the emergency demanded it, to reassign coaches for the different races, and to compel the passengers to take the coaches or compartments thus set apart for their use. Here, for instance, there was ample room for the comfortable seating of both races by the arrangement which the conductor ordered. But if appellant under the law could have retained his seat in the compartment first assigned to white people, and could have compelled the conductor to allow such assignment to stand, it would have resulted in great discomfort to a considerable number of the passengers of both races. The law makers, having required equal but separate and sufficient accommodations for the white and African races, wisely left the matter of when and how the coaches and compartments should be designated and set apart, to the good judgment of the companies, the only exaction being that provision should be made for the equal, separate and sufficient accommodation of the races named, and that the companies should compel the passengers to obey the requirements of the law by accepting and using the separate accommodations furnished them. The company has the right to make reasonable rules and regulations as to the times and manner of the designation and assignments of the separate compartments furnished under the law. To these the passengers must conform. It will be observed that the railway companies and the passengers have reciprocal duties and obligations looking to the due enforcement of the provisions of the 'separate coach law.' Railway companies have the power, independently of any statute, to make reasonable rules for the separation of passengers belonging to different races, observing the conditions of equality of accommodations. Where the statute prescribes all the rules and regulations to be observed, of course, if these are reasonable, they must be observed. But where the statute is silent as to particular rules and regulations, the common law right of the carrier to make them and have them obeyed remains unimpaired. 9 Current Law, p. 512, ¶ 27; *Ohio Valley Ry. Co.* v. *Lander,* 104 Ky. 431, and authorities

cited in brief of counsel in the case for appellant; 2 Hutchinson on Car., ¶ 972, note 28. The court therefore did not err in refusing prayer No. 7.''

The separate street car law, above set out, embracing sections 5658 to 5663 inclusive, contemplates equal treatment of the races, but that separate accommodations shall be furnished, and to accomplish that result, the rules of the appellant company require that white passengers shall seat from the front and colored passengers from the rear. The strictness with which this rule should be enforced would of course depend upon the number and color of the passengers, and upon the scarcity of seats. It is true that section 5661 of Kirby's Digest provides that any person refusing to take the seat assigned to him shall leave the car, or, remaining upon the car, shall be guilty of a misdemeanor and subject to a fine. But that section does not give the passenger the right to defy the law, by becoming subject to its penalty. Section 5660 of Kirby's Digest defines the conductor's duty and provides that ''he may require any passenger to change his seat when or so often as the change in the passengers may make such change necessary.'' We think the word ''require'' as here used is synonymous with the word compel, and confers upon the conductor the authority to use such force as is reasonably necessary to secure the observance of the statute, and the rules of the appellant company promulgated in aid thereof. But this authority and duty would of course give the conductor no right to abuse or to assault a passenger, nor to use any greater force than was reasonably necessary for that purpose.

The judgment of the court below will be reversed for the error in instructing the jury in effect that the conductor could use no force in the enforcement of the rules of the company, and the cause will be remanded for a new trial in accordance with the views here expressed.