**CHICAGO, R. I. & P. R. CO. v. SHARP.**

No. 10838—Opinion Filed Sept. 26, 1922.

(Syllabus.)

**Carriers—Ejection of Negro Passenger From Negro Compartment—Right to Damages.**

Where S., a negro passenger on one of the trains of the C., R. I. & P. Ry. Co., entered the compartment of the forward coach of said train used and designated as the

negro smoker, but in which several white men were riding, and where the conductor in charge of said train, because of the presence of said white men therein, ordered S. to leave said compartment, and, upon the refusal of S. so to do, forcibly ejected him therefrom, held, that S. was rightfully in said compartment; his removal therefrom was unlawful, and the railroad company is not exempt from damages for said unlawful ejection by the provisions of sections 860-870, Rev. Laws 1910, known as the "Coach Law." Held, further, that the conductor in charge of said train was without authority to deprive S. of the comforts and conveniences provided for members of his race, in order to accommodate members of the white race.

Error from District Court, Garfield County; James B. Cullison, Judge.

Action by J. E. Sharp against the Chicago, Rock Island & Pacific Railway Company for damages. Judgment for plaintiff, and defendant brings error. Affirmed.

C. O. Blake, W. R. Bleakmore, and Kent W. Shartel, for plaintiff in error.

H. J. Sturgis, for defendant in error.

NICHOLSON, J. J. E. Sharp brought this action against the Chicago, Rock Island & Pacific Railway Company to recover damages in the sum of $2,000 on account of his ejection from the smoking compartment of one of the defendant's coaches. At the trial the parties entered into a stipulation substituting Walker D. Hines, Director General of Railroads, for the Chicago, Rock Island & Pacific Railway Company as defendant. A verdict was returned for the plaintiff in the sum of $200, upon which judgment was rendered, and to review which this proceeding in error is prosecuted. After the case was lodged in this court, the plaintiff died, and the cause has been revived in the name of H. J. Sturgis, administrator of his estate.

The facts are that Sharp, a negro, boarded one of the southbound passenger trains of the Chicago, Rock Island & Pacific Railway Company at Enid, and went into the middle compartment of the forward coach, which was set apart for negroes. Shortly afterwards, desiring to smoke, he went forward into the compartment usually used as a negro smoker. In this compartment there were four or five white men. Upon discovering Sharp riding in the compartment with these white men, the conductor requested him to go to the other compartment. Sharp stated that he was smoking and refused to leave the smoking compartment, whereupon the conductor forcibly ejected him therefrom and compelled him to continue his journey in the middle compartment. There is some

conflict in the evidence as to whether the forward compartment contained a sign designating it as for negroes. Sharp testified that it was so designated, while the conductor and train porter both testified that there was no sign in that compartment, but there was a sign in the middle compartment designating it for negroes. Sharp testified that before he entered the compartment from which he was ejected he asked the train porter where he could smoke, and the porter replied that said compartment was the proper place for him to go if he desired to smoke. The porter admits this conversation, but says that it took place after Sharp had been removed from such compartment. This coach was divided into three compartments, the rear compartment being used as the smoker for white men.

The plaintiff in his petition alleged that while he was rightfully in said compartment used as a negro smoker the conductor in charge of said train, in a coarse, rude, and insulting manner, ordered plaintiff to get out of said compartment, and when plaintiff protested against such insult and claimed that he was rightfully in said compartment, the conductor unlawfully, maliciously, wantonly, and oppressively assaulted plaintiff and with force and violence ejected him from said compartment, causing him to suffer great physical and mental pain, and insulted and humiliated him in the presence of the other passengers, both white and negro, who were in said car.

Complaint is made of the action of the trial court in refusing to give instructions Nos. 3, 4, and 5 requested by the defendant, and in giving the court's instructions Nos. 5, 6, 7, and 8. The court's instruction No. 9 is practically the same as defendant's requested instruction No. 3, so the defendant was not prejudiced by the court's failure to give such instruction.

Requested instruction No. 4 charged the jury that if the plaintiff, desiring to smoke, entered a compartment of a passenger coach which was being occupied by members of the white race, and after his entrance into said compartment he was notified by the conductor in charge of said train to depart therefrom and that he had no right to remain therein, and after said warnings the plaintiff, a negro, refused to obey said warning, that said conductor thereupon, by reason of the authority vested in him by the statutes of the state of Oklahoma, was authorized, in case of plaintiff's refusal to depart from said compartment in which said white passengers were then riding, to use such physical force as was necessary to remove the

plaintiff, a negro, from said compartment, and that said conductor in so doing, is he used no more force than necessary to accompish said ejectment, would not be liable in damages to said plaintiff. This instruction did not correctly state the law, in that it based the right of the conductor to eject the plaintiff from the compartment upon the fact that white passengers were riding in said compartment regardless of the fact that said compartment had been set aside for negroes. By this instruction the court was asked to tell the jury, in effect, that the plaintiff had no right to ride in the compartment provided for negroes, if there happened to be white passengers riding therein. The trial court properly refused such instruction.

By requested instruction No. 5, the court was asked to instruct the jury that the conductor in charge of a passenger train under the statutes had the right, and it was his duty, to set aside and designate the portion of the cars or train which should be used separately by the white and black races, and if, by reason of the crowded condition of the train, it became necessary for the conductor to rearrange or adjust the compartment or portions of said train for the separate uses of the white and black races in order to accommodate the passengers boarding the train at Enid, he was authorized to make such designations, and it was the duty of the passengers on said train when the designations were so made by said conductor to obey the instructions given by said conductor and occupy the places designated by him, and if the jury found that the conductor made such designations or assignments of compartments of the car or cars and notified the plaintiff not to occupy a certain compartment which he had entered because the same had been set aside for the use of the white race, it was the duty of the plaintiff to depart from said compartment, and if he refused to comply with the request of the conductor and compelled said conductor in the discharge of his duties to eject him from said compartment, and if said conductor used no more force than was necessary to accomplish said ejectment, then said conductor and the defendant were not liable in damages to the plaintiff for said act of ejection or any of the necessary acts or circumstances in connection therewith.

We have been unable to find any statutory provision conferring upon the conductor the authority contended for by the plaintiff in error. By the provisions of section 860, Rev. Laws 1910, it is made the duty of the defendant to provide separate coaches or compartments for the accomodation of the white and negro races, which separate coaches or cars shall be equal in all points of comfort and convenience. By section 863 of said laws, it is provided that each compartment of a railway coach divided by a good and substantial wooden partition with a door therein shall be deemed a separate coach. Section 864 provides a penalty for failure upon the part of the railroad company to provide such separate coaches or compartments. Section 865 makes it a misdemeanor for any passenger upon a railroad train to ride in any coach or compartment not designated for his race, after having been forbidden to do so by the conductor in charge of the train; and further provides that should any passenger refuse to occupy the coaches or compartments to which he is assigned by the officer of such railway company, such officer may refuse to carry such passenger on his train and may eject him, and for such, neither the officer nor the railroad company shall be liable for damages. By the provisions of section 869 of said laws, it is made the duty of the conductor of passenger trains provided with separate coaches or compartments to refuse any passenger admission to any coach or compartment in which he is not entitled to ride and to remove from the train or coach any passenger not entitled to ride therein, and that the railroad conductor or officer shall not be held for damages for his lawful removal of such passenger.

These provisions of the statute make it the duty of the railway company to provide separate coaches or compartments for the accommodation of the white and colored races, which are required to be equal in all points of comfort and convenience. Pursuant thereto, the defendant had made such provision; the chair cars being set aside for members of the white race, the rear compartment of the forward coach being set aside as a smoker for white men, the middle compartment of such coach being set aside for negroes of both sexes, and the forward compartment being used as a smoker for negro men. On this particular occasion there were white men occupying the negro smoker when the train crossed the line between Kansas and Oklahoma, and the conductor did not request them to remove therefrom, because, as he says, of the crowded condition of the train. When the plaintiff, desiring to smoke, entered such compartment, the conductor, without notifying him of the conditions, and without telling him that it was necessary that said compartment be used for the accommodation

of white passengers, ordered the plaintiff to leave said compartment, and, upon his failure to do so, forcibly ejected him therefrom. By this instruction the court was asked to direct the jury that the conductor acted within his rights in so doing. By the provisions of the coach law, the accommodations shall be equal in all points of comfort and convenience. The railroad company had provided a smoker for members of the white race, and following the mandate of the statute, had likewise provided a smoking compartment for members of the colored race. The conductor in charge of the train was without authority to set aside the provisions of the statute and deprive a member of either race of the comforts and conveniences to which he was entitled. The trial court did not err in refusing such requested instruction.

By the court's instruction No. 5, the jury were told that, under the statutes of this state, it is a misdemeanor for a negro to ride in a white coach, or a white person to ride in a negro coach, and if the jury should find from the evidence that plaintiff was riding in a coach or a compartment of a coach designated, set aside, and generally used for the accommodation of negro passengers, and that white persons were permitted to use the compartment so designated, then, under those circumstances, the railway company or its officers had no right to remove the plaintiff from said car.

Instruction No. 6 instructed the jury that if the plaintiff was riding in a separate railway coach which had been duly designated as a railway coach in which negro passengers were carried, and plaintiff was conducting himself in a civil manner, and if the jury found that the plaintiff was wrongfully ejected or removed from a coach in which he was permitted to ride, then the jury should find for the plaintiff in such amount as he had shown he was damaged by reason of the unlawful or wrongful ejectment.

Instruction No. 7 told the jury that if it found from the evidence that the railway company failed to furnish accommodations as described in the court's instructions, their verdict should be for the plaintiff in such amount as he had shown himself entitled to.

By instruction No. 8, the jury was told that before the plaintiff could recover, he must establish, first, his right to ride in the compartment of the coach in which he was at the time of the wrongful ejectment therefrom by the defendant's conductor; second, the unlawful ejection from said compartment by said conductor as agent of the defendant railway; and, third, that, as a direct result thereof, he suffered damages therefrom; and if the plaintiff failed to establish any one of these facts by a fair preponderance of the evidence, their verdict should be for the defendant.

In our opinion, these instructions fairly state the law applicable to the facts, and the court did not err in giving the same to the jury.

We are not unmindful of the holding of the Supreme Court of Arkansas in Bradford v. St. Louis, I. M. & S. Ry. Co., 124 S. W. 516, wherein it was held that under the provisions of Kirby's Digest, secs. 6622-6632, requiring the railroad company to provide equal but separate accommodations for the white and colored races, a company may make reasonable regulations as to the time and manner of designating the separate compartments of the races, and where there were more colored passengers than the end of the smoker set apart for them would accommodate, the conductor could order white passengers to take seats in a Pullman coach in the rear, and, if a white passenger in a smoker refused to change his seat, could use such force as was necessary to eject him from the smoker and compel him to go to the coach designated for white passengers. This case hinged upon certain rules of the company whereby under certain circumstances the conductor was authorized to seat passengers in the Pullman, and it was in compliance with these rules that the conductor directed the passenger to go to the Pullman. In that case the passenger was not being deprived of equal accommodations. In the case at bar, no rules of the company were shown, and, in our opinion, neither the company nor conductor could, by rule or otherwise, deprive the plaintiff of the accommodations provided for him by the statutes.

The plaintiff in error relies upon the case of Stratford v. Midland Valley R. Co., 36 Okla. 127, 128 Pac. 98, and insists that, upon the authority of that case, a recovery cannot be had. With this we cannot agree. In that case the plaintiff violated the statutes, in that he refused to ride in the negro compartment, and the conductor ejected him from the train, and filed a criminal complaint against him for violating the separate coach law, and in an action against the railroad company for malicious prosecution the court held that the company was relieved of liability by the provisions of the statute. In the case at bar, the plaintiff was where he had a right to be. If the law was

violated, it was by the white passengers who were riding in the negro compartment and the conductor who permitted them to ride there.

It is only where the passenger is not entitled to ride in a compartment from which he is ejected that the conductor is authorized to remove him, and it is only for a lawful removal of a passenger that the conductor and company are not held liable for damages.

The jury found for the plaintiff, and as the evidence reasonably tends to support the verdict, the judgment of the trial court will not be disturbed, but is affirmed.

KANE, JOHNSON, McNEILL, MILLER, and KENNAMER, JJ., concur.